IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MILES O. BONTY, | ) | No. C 10-5360 LHK (PR) |
| Plaintiff, | ) ) | ORDER GRANTING PLAINTIFF'S REQUEST FOR LEAVE TO FILE A SURREPLY; AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| vs. | ) ) ) | |
| OFFICER J. RAMSEY, et al., | ) ) | |
| Defendants. | ) ) | |

Plaintiff Miles O. Bonty, proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against prison officials at Salinas Valley State Prison ("SVSP"), including Defendants Correctional Sergeant Battles, Correctional Lieutenant J. Stevenson, and Correctional Officers J. Ramsey, N. Reese., and D. Vega. Plaintiff maintains that on February 25, 2010, Defendants acted with deliberate indifference to his physical safety by failing to respond to threats made against Plaintiff by Inmate Williams, who subsequently assaulted him. (Compl. at 4.) Furthermore, Plaintiff alleges an excessive force claim against Defendants stemming from Defendant Vega's use of excessive force in firing a 40 millimeter foam round launcher at him and Inmate Williams in order to stop the attack. (*Id.* at 5.) Finally, Plaintiff claims that Defendants' failure to protect Plaintiff and Defendant Vega's use of force were retaliatory responses to Plaintiff's previously-filed complaints and inmate appeals. (*Id.*)

Order Granting Plaintiff's Request for Leave to File a Surreply; and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.LHK\CR.10\Bonty360msj.wpd

Defendants have first moved to dismiss some of Plaintiff's claims, arguing that Plaintiff: (1) failed to exhaust his claim for deliberate indifference to his safety needs as to Defendants Battles and Stevenson; (2) failed to plead enough facts to state a claim for retaliation against Defendants Battles and Stevenson; and (3) failed to plead enough facts to state a claim for excessive force against Defendants Battles, Stevenson, Ramsey, and Reese. In the alternative, Defendants have also moved for summary judgment, arguing that there is no disputed issue of material fact, that they are entitled to judgment as a matter of law, and that they are entitled to qualified immunity. Plaintiff filed his opposition. Defendants filed their reply. Plaintiff has moved for leave to file a "Response to Defendants Reply to Opposition to Motion to Dismiss and Motion for Summary Judgment," which the Court construes as a request for leave to file a surreply. Having carefully considered the papers submitted, the Court hereby GRANTS Plaintiff's request for leave to file a surreply, and GRANTS Defendants' motion for summary judgment, for the reasons set out below.

## BACKGROUND[1]

On the date of the incident, February 25, 2010, Plaintiff was housed in SVSP Facility A, Building 5, cell 221, and Inmate Williams was housed in the same housing unit, in cell 220. (Compl. at 4, 9; Stevenson Decl., Ex. A at 2.) During the relevant time period, Defendants were all employed in their various capacities as prison officials at SVSP. (Vega Decl. ¶ 2; Ramsey Decl. ¶ 2; Reese Decl. ¶ 2; Battles Decl. ¶ 2; Stevenson Decl. ¶ 2.) Specifically, on February 25, 2010, Defendants' assignments were as follows: (1) Defendants Ramsey and Reese were on duty as the floor officers in Facility A, Building 5 (Ramsey Decl. ¶ 2; Reese Decl. ¶ 2); (2) Defendant Vega was on duty as the control booth officer on the second floor of Facility A, Building 5 (Vega Decl. ¶ 2); (3) Defendant Battles was on duty as Facility Program Sergeant for Facility A (Battles Decl. ¶ 2); and (4) Defendant Stevenson was on duty as Correctional Lieutenant for Facility A (Stevenson Decl. ¶ 2).

---

[1] The following facts are undisputed unless otherwise indicated.

Order Granting Plaintiff's Request for Leave to File a Surreply; and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.LHK\CR.10\Bonty360msj.wpd          2

1       At approximately 6:00 p.m., Defendant Ramsey was performing the security count of the inmates in Building 5. (Ramsey Decl. ¶ 3; Compl. at 4.) The security count is a process by which inmates at SVSP are counted while in their cells at specific times during the day to confirm that all are accounted for. (Ramsey Decl. ¶ 3; Battles Decl. ¶ 5; Stevenson Decl. ¶ 5.) A security count typically takes about ten minutes to complete, after which the count is called in to SVSP's central control. (*Id.*) Inmates may not leave their cells until all the housing units have called in their counts and SVSP's central control has confirmed that the institution is secure and given the "all clear." (*Id.*) The process of confirming that all inmates are accounted for and that the institution is "all clear" typically takes about forty-five to fifty minutes. (Ramsey Decl. ¶ 3.) After the security count was completed and SVSP's central control called the "all clear," Inmate Williams was released from his cell. (Compl. at 4.)

      At approximately 7:30 p.m., Inmate Williams informed Defendants Vega, Ramsey, and Reese that he wished to change his cell or housing unit because he was having problems with Plaintiff. (*Id.*; Vega Decl. ¶ 3; Reese Decl. ¶ 3; Ramsey Decl. ¶ 4.)

      Defendants Vega, Ramsey and Reese allege that at no time did Inmate Williams tell them that he intended to attack Plaintiff. (Vega Decl. ¶ 4; Reese Decl. ¶ 4; Ramsey Decl. ¶ 6.) Meanwhile, Plaintiff alleges Inmate Williams was called to the "officer's office," where he explained to Defendants Reese, Ramsey, and Vega that he was having problems with Plaintiff and would attack Plaintiff if not moved from his cell or housing unit. (Compl. at 4.)

      As correctional officers, Defendants Vega, Ramsey, and Reese claim that they do not have authority to make housing changes for inmates. (Vega Decl. ¶ 3; Reese Decl. ¶ 3; Ramsey Decl. ¶ 5.) Thus, Defendants Ramsey and Reese escorted Inmate Williams to the Facility A Program Office to speak with their superiors, Defendants Battles and Stevenson. (Compl. at 4; Vega Decl. ¶ 3; Reese Decl. ¶ 3; Ramsey Decl. ¶ 5; Battles Decl. ¶ 3; Stevenson Decl. ¶ 3.)

      Inmate Williams informed Defendants Battles and Stevenson that he was having problems with Plaintiff, and requested that his cell or housing unit be changed. (Compl. at 4;

1  Battles Decl. ¶ 3; Stevenson Decl. ¶ 3.)  In order for inmates to change cells or housing units,
2  prison officials must first locate an available cell and other inmates willing to swap out cell
3  mates.  (Battles Decl. ¶ 4; Stevenson Decl. ¶ 4.)  The next security count was at 9:15 p.m., after
4  which all inmates would be locked in their cells for the night.  (*Id.*)  Given that the security count
5  would occur in less than two hours, during and after which both Plaintiff and Inmate Williams
6  would be locked in their respective cells, Defendant Battles asked Inmate Williams whether the
7  issue was urgent or whether he could wait until morning to see if there was an available cell.
8  (Battles Decl. ¶ 6; Stevenson Decl. ¶ 6.)  Inmate Williams told Defendants Battles and Stevenson
9  that the issue was not urgent, and that cell move could wait until morning.  (*Id.*)

10 Defendants Battles and Stevenson allege that at no time did Inmate Williams tell them
11 that he intended to attack Plaintiff.  (Battles Decl. ¶ 7; Stevenson Decl. ¶ 7.)  Plaintiff alleges that
12 Defendants did not take seriously the threats made by Inmate Williams, and subsequently
13 returned him to the housing unit.  (Compl. at 4.)

14 At approximately 8:15 p.m., Defendant Ramsey was sitting at the podium in the center of
15 the first floor conducting the evening medication distribution with Licensed Vocational Nurse
16 (LVN) Baker.  (Ramsey Decl. ¶ 7; Reese Decl. ¶ 5.)  Defendant Reese had stepped away from
17 the podium and was in the staff office, putting away his cell search log book.  (*Id.*)  Defendant
18 Vega was in the control booth on the second floor, releasing inmates who were approved for the
19 evening medication distribution from their cells.  (Vega Decl. ¶ 5.)  Meanwhile, Plaintiff had
20 been released from his cell for the evening medication distribution and was standing in front of
21 the podium.  (Compl. at 4.; Ramsey Decl. ¶ 7; Vega Decl. ¶ 5.)  Inmate Williams, upon returning
22 to the housing unit, waited by the water fountain until Plaintiff was released from his cell to pick
23 up his medication from "Dayroom B-Section Podium."  (Compl. at 4.)  Inmate Williams
24 approached Plaintiff, and without warning, struck Plaintiff from behind in the back of the head.
25 (*Id.*)  Defendants allege that Plaintiff responded to being struck by turning to face Inmate
26 Williams, and both inmates stepped aggressively forward towards each other.  (Ramsey Decl.
27
28 Order Granting Plaintiff's Request for Leave to File a Surreply; and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.LHK\CR.10\Bonty360msj.wpd          4

1  ¶ 7; Vega Decl. ¶ 5.) However, Plaintiff alleges that he did not make any aggressive advances
2  after being attacked by Inmate Williams. (Compl. at 5.)

3  Defendant Ramsey immediately activated his personal alarm and ordered both inmates to
4  "get down" and lie in a prone position on the floor. (Ramsey Decl. ¶ 8; Vega Decl. ¶ 6.)
5  Defendant Vega secured a loaded 40 millimeter foam round launcher and, from the control
6  booth, yelled at both inmates to "get down." (Ramsey Decl. ¶ 8; Vega Decl. ¶ 6.) Defendants
7  allege that both inmates remained standing in an aggressive posture. (*Id.*) Plaintiff alleges that
8  Inmate Williams began assuming a prone position on the floor while Plaintiff remained standing
9  in front of the podium in a non-aggressive manner. (Compl. 5.) Defendant Vega stepped around
10 the control booth panel and aimed the 40 millimeter foam round launcher at Inmate Williams'
11 lower legs, attempting to aim away from Defendant Ramsey and LVN Baker, who were still
12 standing at the podium. (Ramsey Decl. ¶ 9; Vega Decl. ¶ 6.) Defendant Vega again yelled at
13 both inmates to "get down." (*Id.*)

14 Defendants allege that although Inmate Williams attacked Plaintiff first, the risk
15 remained that Plaintiff would attempt to retaliate against Inmate Williams by striking back.
16 (Ramsey Decl. ¶ 9; Vega Decl. ¶ 7.) Defendants claim that the only way to ensure that the
17 inmates would not continue their altercation was to require both inmates to lay in a prone
18 position on the floor. (*Id.*) Despite multiple direct orders for Plaintiff to "get down;" however,
19 Defendants claim -- and Plaintiff does not dispute -- that he remained standing. (Compl. at 5;
20 Ramsey Decl. ¶ 9; Vega Decl. ¶ 8.)

21 Defendant Reese, hearing Defendant Vega yell at the inmates to "get down," stepped out
22 of the staff office. (Reese Decl. ¶ 6.) Defendant Ramsey pulled out his MK-9 chemical agent
23 sidearm canister and was preparing to discharge oleoresin capsicum pepper spray at the inmates.
24 (Ramsey Decl. ¶ 10; Reese Decl. ¶ 6.) From the control booth, Defendant Vega then fired the 40
25 millimeter foam round launcher at the region of the lower legs of Inmate Williams. (Ramsey
26 Decl. ¶ 10; Reese Decl. ¶ 6; Vega Decl. ¶ 8.) Defendants allege that the 40 millimeter foam
27 round hit the podium and ricocheted off the podium and onto the floor. (Ramsey Decl. ¶ 10;

28 Order Granting Plaintiff's Request for Leave to File a Surreply; and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.LHK\CR.10\Bonty360msj.wpd         5

Reese Decl. ¶ 6; Vega Decl. ¶ 8; Battles Decl. ¶ 10; Stevenson Decl. ¶ 10.) Plaintiff alleges that Defendant Vega pointed the foam round launcher at him, shot, and the 40 millimeter round hit him in the upper part of his face. (Compl. at 5.)

Defendant Vega reloaded the 40 millimeter foam round launcher and prepared to fire again. (Vega Decl. ¶ 9.) At that point, both inmates were in a prone position on the floor. (Ramsey Decl. ¶ 10; Reese Decl. ¶ 6; Vega Decl. ¶ 9.)

Defendant Battles, having arrived at Building 5 in response to the alarm, ordered Defendant Ramsey to handcuff Inmate Williams, and Defendant Reese to handcuff Plaintiff. (Ramsey Decl. ¶ 11; Reese Decl. ¶ 7; Vega Decl. ¶ 10; Battles Decl. ¶ 8.) Defendant Battles then ordered other responding staff members to escort both inmates to separate holding cells in the Facility A medical clinic. (*Id.*)

At approximately 8:24 p.m., Plaintiff was examined by medical staff, who observed that Plaintiff had sustained a single injury, an abrasion or scratch on the right side of the face. (Battles Decl. ¶ 9; Stevenson Decl. ¶ 9, Ex. B at AGO 17.) Plaintiff complained of a head injury, and at 9:21 p.m, Defendants Battles and Stevenson conducted a video recording of Plaintiff's condition, in which Plaintiff stated that had sustained a single injury to the right side of his face from being hit by the foam round. (Battles Decl. ¶ 9; Decl. Stevenson ¶ 9, Ex. B.)

## MOTION FOR SUMMARY JUDGMENT

I. <u>Legal Standard</u>

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the Court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

II. <u>Evidence Considered</u>

A district court may only consider admissible evidence in ruling on a motion for summary judgment. See Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). In support of Defendants' motions for summary judgment, declarations have been filed by Defendants' Attorney Adrian Shin, Custodian of Records E. Medina, and Defendants Vega, Ramsey, Reese, Battles, and Stevenson.

Plaintiff verified his complaint filed on November 29, 2010 by signing it under "penalty of perjury." Plaintiff submitted his opposition and surreply on August 16, 2010 and October 6, 2011, respectively. The Court notes that Plaintiff's surreply raises many of the same arguments as his opposition. Plaintiff's allegations in his opposition and surreply are not verified in conformity with 28 U.S.C. § 1746 because Plaintiff does not assert any of these statements under "penalty of perjury." Therefore, for the purposes of this Order, the Court will treat Plaintiff's original complaint as an affidavit in opposition to Defendants' motion to dismiss and motion for

Order Granting Plaintiff's Request for Leave to File a Surreply; and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.LHK\CR.10\Bonty360msj.wpd     7

summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

III. Analysis

    A. Deliberate Indifference to Safety Needs

Plaintiff claims that Defendants were deliberately indifferent to his safety needs in violation of the Eighth Amendment. Specifically, he complains that Defendants failed to respond to violent threats made by Inmate Williams and prevent the resulting attack.

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The failure of prison officials to protect inmates from harm caused by other inmates or by dangerous conditions at the jail violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate safety. *Id.* at 834. Neither negligence nor gross negligence will constitute deliberate indifference. *Id.* at 835-36 & n.4. A prison official cannot be held liable under the Eighth Amendment for deliberate indifference unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. *Id.* at 837. The official must both be aware of facts from which the inference that a substantial risk of serious harm exists could be drawn, and the official must also actually draw the inference. *Id.* However, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Id.* at 842. This is a question of fact. *Id.*

Here, to be liable for deliberate indifference to Plaintiff's safety, Defendants Vega, Ramsey, Reese, Battles, and Stevenson must each individually know of and consciously disregard an excessive risk to Plaintiff's safety. *See Farmer*, 511 U.S. at 837.

The Court finds that Plaintiff has failed to raise a triable issue as to whether Defendants acted with deliberate indifference in regard to guaranteeing his personal safety. To survive a

Order Granting Plaintiff's Request for Leave to File a Surreply; and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.LHK\CR.10\Bonty360msj.wpd     8

summary judgment motion, Plaintiff must raise a triable issue of fact as to both the objective and subjective prongs of the deliberate indifference standard. Viewing the evidence in the light most favorable to Plaintiff, there is no triable issue because Defendants were not subjectively deliberately indifferent to a risk to Plaintiff's safety needs.

Taking all of Plaintiff's allegations as true and construing them in the light most favorable to him, the following amount at most to negligence: (1) Defendants did not heed Inmate Williams' threats against Plaintiff[2] after inquiring and being told that the matter was not urgent, and (2) Defendants failed to intervene quickly enough to guarantee Plaintiff's safety. Negligence and even gross negligence are not enough to amount to an Eighth Amendment violation. *Farmer*, 511 U.S. at 835. Deliberate indifference is not shown by merely stating that a defendant should have known of a risk, but requires an actual perception of a risk that does not exist merely because a reasonable person should have perceived a risk. *Id.* at 836 & n.4.

Again, Plaintiff claims that Defendants were deliberately indifferent in failing to protect him from being attacked by Inmate Williams. (Compl. at 4.) However, the record shows that as soon as Defendants Vega, Ramsey, and Reese became aware of a potential situation, Defendants Ramsey and Reese took Inmate Williams' concerns seriously. Because Defendants Vega, Ramsey, and Reese did not have authority to change an inmate's housing, the only course of action they could have pursued was to notify their superior officers, which they did by escorting Inmate Williams to speak with Defendants Battles and Stevenson. (*Id.*; Vega Decl. ¶ 3; Reese Decl. ¶ 3; Ramsey Decl. ¶ 5; Battles Decl. ¶ 3; Stevenson Decl. ¶ 3.) Additionally, Defendants Vega, Ramsey, and Reese were in the middle of security count and were preoccupied with participating in counting all of the inmates in Building 5. (Ramsey Decl. ¶ 3, 7; Reese Decl. ¶ 5.) Defendant Vega was preoccupied with releasing inmates from their cells for the evening medication distribution. (*Id.*) Defendant Ramsey was at the podium conducting the evening

---

[2] Defendants claim Inmate Williams never said he would attack Plaintiff or had threatened Plaintiff. Plaintiff claims otherwise. In this analysis, the Court assumes Plaintiff's allegation is true, but finds no liability, as explained above.

Order Granting Plaintiff's Request for Leave to File a Surreply; and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.LHK\CR.10\Bonty360msj.wpd           9

medication distribution with LVN Baker. (*Id.*) Defendant Reese was in the staff office. (*Id.*)

Furthermore, Defendants could not have prevented Inmate Williams' attack on Plaintiff because they had no indication that the risk of attack[3] was immediate. First, because finding an available cell for Inmate Williams would have taken until the morning of the next day, Defendants Battles and Stevenson asked Inmate Williams whether the issue was urgent or if it could wait until the next day, to which Inmate Williams responded that the issue was not urgent. (Battles Decl. ¶ 6; Stevenson Decl. ¶ 6.) Also, even taking Plaintiff's allegation -- that Inmate Williams informed Defendants that he intended to attack Plaintiff -- as true, the record still shows that Inmate Williams waited until Plaintiff was in line to receive his medication before he attacked him as opposed to attacking him immediately outside of Plaintiff's cell, which indicates that the threat of attack was not, in fact, immediate. (Compl. at 4.)

Further, while Defendants were unable to prevent Inmate Williams from striking Plaintiff, as soon as they became aware of the risk to Plaintiff's safety, they responded reasonably to stop the attack. *Farmer*, 511 U.S. at 826; *Helling v. McKinney*, 509 U.S. 25, 35 (1993). Defendants Vega and Ramsey gave multiple direct orders to the inmates to "get down," and Defendant Vega ultimately discharged a 40 millimeter foam round launcher, before both inmates "proned out." (Compl. at 5; Ramsey Decl. ¶ 8-10; Vega Decl. ¶ 6-9; Reese Decl. ¶ 6.)

In sum, there is no evidence that Defendants had knowledge of, much less a reasonable opportunity to prevent, an immediate risk to Plaintiff's physical safety at the hands of Inmate Williams, especially given Defendants' interim attempts to accommodate Inmate Williams' housing situation. As a result, there is no genuine issue of material fact as to whether Defendants acted with deliberate indifference to Plaintiff's safety needs.

Accordingly, Defendants are entitled to judgment as a matter of law on this claim. *See Celotex Corp.*, 477 U.S. at 323.

---

[3] Again, the Court notes that Defendants dispute Plaintiff's claim that they knew there was a risk of an attack by Inmate Williams. However, assuming Plaintiff's allegation as true, the Court still finds no liability even if Defendants were aware of a risk of attack, as explained above.

Order Granting Plaintiff's Request for Leave to File a Surreply; and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.LHK\CR.10\Bonty360msj.wpd                    10

B.  Excessive Force

Plaintiff alleges that Defendant Vega used excessive force against him by shooting the 40 millimeter foam round launcher in his direction, in violation of his Eighth Amendment right against cruel and unusual punishment. Defendant Vega argues that he is entitled to summary judgment because, based on the undisputed facts, he did not violate Plaintiff's constitutional rights. Meanwhile, Defendants argue that Plaintiff's excessive force claims against Defendants Ramsey and Reese should be dismissed for failure to state a claim. In his complaint, Plaintiff pleads no facts to show that Defendants Ramsey or Reese were involved in the alleged use of excessive force by Defendant Vega. However, it is undisputed that Defendants Ramsey and Reese were present during the alleged use of force. Thus, the Court construes Plaintiff's lack of allegations against Defendants Ramsey and Reese as a claim that they failed to intervene in the alleged use of excessive force by Defendant Vega.

The arbitrary and wanton infliction of pain violates the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). When prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm. *Id.* at 6-7 (citing *Whitley v. Albers*, 475 U.S. 312, 317 (1986)). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7; *see also Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to need in each situation). In reviewing these factors, courts must accord prison administrators wide-ranging deference in the adoption and execution of polices and practices to further institutional order and security. *Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir. 2001).

1    If the force officers use is so disproportionate to that required that it suggests deliberate
2 sadism, the use of force violates the Eighth Amendment. *Whitley*, 475 U.S. at 322; *Madrid v.*
3 *Gomez*, 889 F. Supp. 1146, 1172 (N.D. Cal. 1995) (finding that although cell extractions are "an
4 essential tool in maintaining security in any prison," pattern of unnecessary extractions and
5 massive force employed violated Eighth Amendment).
6    Still, not every criticism of an officer's conduct suggests excessive force. *Whitley*, 475
7 U.S. at 322.  The Eighth Amendment does not prohibit uses of force that appear unreasonable in
8 hindsight, so long as the officers were acting in good faith and for a legitimate end. *Id.*; *compare*
9 *Clement v. Gomez*, 298 F.3d 898, 903-04 (9th Cir. 2002) (applying Eighth Amendment
10 "malicious and sadistic" standard to prison pepper spray incident) *with Headwaters Forest*
11 *Defense v. County of Humboldt*, 240 F.3d 1185, 1198-1206 (9th Cir. 2001), *vacated on other*
12 *grounds*, 533 U.S. 194 (2001) (applying Fourth Amendment "objectively reasonable" excessive
13 force standard to police use of pepper spray).  In order for an Eighth Amendment excessive force
14 case to go to the jury, the evidence must go "beyond a mere dispute over the reasonableness of a
15 particular use of force or the existence of arguably superior alternatives"  to support "a reliable
16 inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322.
17    Taking the evidence in the complaint as true, and drawing all inferences therefrom in
18 Plaintiff's favor, there is no genuine issue of material fact as to whether Defendant Vega's use of
19 force was excessive.  According to Plaintiff, the record shows that he was not the aggressor of
20 the altercation between himself and Inmate Williams, and that the force used against him by
21 Defendant Vega was excessive.  Plaintiff points out the following:  (1) he was attacked by
22 Inmate Williams from behind; (2) Inmate Williams ran several feet away from Plaintiff after
23 attacking him and proceeded to lay prone on the floor; (3) Plaintiff continued to stand in front of
24 the podium; and (4) Defendant Vega subsequently fired a 40 millimeter foam round at Plaintiff
25 that hit him in the upper part of his face. (Compl. at 5.)  Plaintiff makes no mention of
26 Defendants Ramsey's and Vega's allegation that he responded by turning and facing Inmate
27 Williams in an aggressive stance, nor does he acknowledge any alleged orders to "prone down"
28 Order Granting Plaintiff's Request for Leave to File a Surreply; and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.LHK\CR.10\Bonty360msj.wpd            12

1  prior to Defendant Vega shooting the 40 millimeter foam round launcher. Again, taking
2  Plaintiff's account as true, the fact that Inmate Williams attacked him first did not negate the
3  possibility that Plaintiff could have attempted to defend himself or even fight back against
4  Inmate Williams. In short, Defendant Vega's use of force was necessary in order to restore
5  order. *Hudson*, 503 U.S. at 7. Plaintiff cannot demonstrate that Defendant Vega's use of force
6  was objectively unreasonable, malicious, and sadistic, for the very purpose of causing harm.
7  *Clement*, 298 F.3d at 903. The record shows that Defendant Vega used the 40 millimeter foam
8  round launcher only after Plaintiff was repeatedly instructed and warned by Defendants Vega
9  and Ramsey to assume a prone position on the floor and was given multiple opportunities to
10 comply with their orders. Moreover, Defendant Vega attempted to temper the severity of the
11 forcefulness of the response by aiming the foam round launcher at Inmate Williams' legs, rather
12 than directly aiming it at either inmate. (Ramsey Decl. ¶ 10; Reese ¶ 6; Ramsey ¶ 8.) Therefore,
13 Defendant Vega's use of force in this incident deserves the deference given to "prophylactic or
14 preventive measures intended to reduce the incidence of . . . breaches of prison discipline."
15 *Whitley*, 475 U.S. at 322.

16       In sum, the undisputed evidence in the record before the Court shows that Inmate
17 Williams had initiated the altercation with Plaintiff. Viewing the evidence in the light most
18 favorable to Plaintiff, there is no triable issue because Defendant Vega stated that he aimed the
19 40 millimeter foam round launcher and shot at Inmate Williams' legs in order to restore order.
20 There is no evidence of a disproportionate use of force; instead, the evidence shows that the
21 force used by Defendant Vega was a good faith effort to restore discipline because Plaintiff and
22 Inmate Williams were in an altercation, and Plaintiff refused to comply with orders to assume a
23 prone position. Therefore, Plaintiff has failed to establish a triable issue of fact that he was
24 subjected to excessive force by Defendant Vega. Because the facts indicate that Defendant Vega
25 acted reasonably, there was no need for Defendants Ramsey and Reese to intervene.

26       Accordingly, Plaintiff fails to raise a genuine issue of fact regarding Defendant Vega's
27 malicious intent and regarding the need for Defendants Ramsey and Reese to intervene. Thus,

28 Order Granting Plaintiff's Request for Leave to File a Surreply; and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.LHK\CR.10\Bonty360msj.wpd     13

1  Defendants Vega, Ramsey and Reese are entitled to summary judgment on the excessive force
2  claim as a matter of law. *See Celotex Corp.*, 477 U.S. at 323.

        C.      <u>Retaliation</u>

Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983. *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against a prisoner (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). The prisoner must prove all the elements of a viable retaliation claim, including the absence of legitimate correctional goals for the conduct of which he complains. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).

For purposes of any type of retaliation claim, a plaintiff must show a causal connection between a defendant's retaliatory animus and a subsequent injury. *Hartman v. Moore*, 547 U.S. 250, 259 (2006). The requisite causation must be but-for causation, i.e., without the prohibited animus, the adverse action would not have been taken. *Id.* at 260. Upon a prima facie showing of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate, he would have taken the action of which plaintiff complains. *Id.* If there is a finding that retaliation was not a but-for cause of the action of which the plaintiff complains, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of retaliatory animus in the official's mind. *Id.* "It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." *Id.*

Here, prior to February 25, 2010, Plaintiff had submitted numerous complaints and inmate appeals against Defendants Vega, Ramsey, and Reese prior to the incident on February 25, 2010. (Medina Decl., Ex. A at 1-4.)

Order Granting Plaintiff's Request for Leave to File a Surreply; and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.LHK\CR.10\Bonty360msj.wpd     14

1    As an initial matter, Plaintiff has failed to link Defendants Vega, Ramsey, and Reese to
2 his retaliation claim.  As mentioned above, Plaintiff fails to show that Defendants Vega, Ramsey,
3 and Reese knew of an immediate intent on the part of Inmate Williams to attack Plaintiff,
4 especially given the fact that Inmate Williams had indicated that the matter could wait until
5 morning and that Inmate Williams did not attack Plaintiff immediately outside of his cell.
6 (Battles Decl. ¶ 6; Stevenson Decl. ¶ 6; Compl. at 4.)  Because Defendants Vega, Ramsey, and
7 Reese did not know of an immediate intent by Williams to attack Plaintiff, they could not have
8 formulated a retaliatory motive to allow the attack to occur.  Thus, Plaintiff cannot show that any
9 alleged retaliatory motive was the "but-for" cause for the alleged failure of Defendants Vega,
10 Ramsey, and Reese to protect Plaintiff.

    Moreover, as explained above, Defendant Vega's use of force was a reasonable response to restore order, rather than an adverse action against Plaintiff.  *Rhodes*, 408 F.3d at 568.  Again, Plaintiff cannot demonstrate that any alleged retaliatory motive by Defendant Vega was the "but-for" cause of the use of force.  *Hartman*, 547 U.S. at 260.

    Plaintiff has not alleged facts or presented evidence from which the Court can infer that Defendants' time of reaction to the altercation involving Plaintiff and Inmate Williams, as well as the subsequent use of force, was for a reason other than to restore order.  Because Plaintiff has failed to come forth with evidence from which a jury could reasonably find for the nonmoving party, Defendants are "entitled to judgment as a matter of law."  *See Celotex Corp.*, 477 U.S. at 323.

    Accordingly, the Court finds there are no genuine issues of material fact as to Plaintiff's retaliation claim, and Defendants are entitled to judgment as a matter of law as to this claim.  *Id.*

    D.    Supervisory Liability

    Defendants argue that Plaintiff's retaliation and excessive force claims against Defendants Battles and Stevenson should be dismissed for failure to state a claim.  In his complaint, Plaintiff pleads no facts to show that Defendants Battles' or Stevenson's alleged failure to protect him was retaliatory, or that Defendants Battles or Stevenson were involved in

Order Granting Plaintiff's Request for Leave to File a Surreply; and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.LHK\CR.10\Bonty360msj.wpd         15

the alleged use of excessive force by Defendant Vega in shooting the 40 millimeter foam round launcher in Plaintiff's direction. (Compl. at 4-5.) Therefore, the Court construes Plaintiff's lack of allegations against Defendant Battles (a Correctional Sergeant) and Defendant Stevenson (a Correctional Lieutenant) to mean that he is suing them in their supervisory capacities. As explained below, to the extent that Defendants Battles and Stevenson are liable in their supervisory capacities, Plaintiff's claim fails.

Supervisory liability may be imposed against a supervisory official in his individual capacity only "for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Preschooler II v. Davis*, 479 F.3d 1175, 1183 (9th Cir. 2007) (internal quotation and citation omitted). Consequently, a supervisor may be held liable under 42 U.S.C. § 1983 only upon a showing of personal involvement in a constitutional deprivation, or a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted); *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding supervisor ordinarily "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them").

Under no circumstances is there respondeat superior liability under 42 U.S.C. § 1983. Put another way, there is no liability under § 1983 solely because one is generally responsible for the actions or omissions of another. *See Taylor*, 880 F.2d at 1045. "In a § 1983 or a *Bivens*[4] action – where masters do not answer for the torts of their servants -- the term 'supervisory liability' is a misnomer; [a]bsent vicarious liability, each Government official, his or her title

---

[4] *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 392-97 (1971) (a private right of action may be implied from the Constitution itself for alleged constitutional violations by federal employees or their agents).

Order Granting Plaintiff's Request for Leave to File a Surreply; and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.LHK\CR.10\Bonty360msj.wpd        16

notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Because there were no constitutional violations on the part of Defendants Vega, Ramsey, and Reese, the Court finds that Defendants Battles and Stevenson cannot be liable for participating in, directing, or failing to act to prevent any alleged constitutional violations. Accordingly, Defendants Battles and Stevenson are entitled to summary judgment as a matter of law." *See Celotex Corp.*, 477 U.S. at 323.

E.  Qualified Immunity

Defendants also claim qualified immunity, but because the Court has found no constitutional violation, a qualified immunity analysis is not necessary.

**CONCLUSION**

1. Plaintiff's request for leave to file a surreply (Docket no. 38) is GRANTED.
2. Defendants' motion for summary judgment (Docket no. 21) is GRANTED as to all claims.[5] Judgment shall be entered in favor of Defendants.
3. The Clerk shall terminate all pending motions and close the file.

IT IS SO ORDERED.

DATED: 12/16/11

LUCY H. KOH
United States District Judge

---

[5] Because the Court has GRANTED Defendants' motion for summary judgment, it need not address Defendants' alternative arguments in their motion to dismiss.

Order Granting Plaintiff's Request for Leave to File a Surreply; and Granting Defendants' Motion for Summary Judgment
C:\Users\brownm\AppData\Local\Temp\notesF8C1A4\Bonty360msj.wpd
17